ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
J.B.D C.-Atlanta

OCT 18 2005

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

| | |
|---|---|
| S GREGORY HAYS, Receiver for Mobile Billboards of America. Inc., et al., | |
| Plaintiff, | |
| v. | CIVIL ACTION NO 2705 **BB** |
| DAVID E. ADAM, JACKIE ADAMS, AF, INC , ALTERNATIVE FINANCIAL CONCEPTS. LLC, ARTHUR ANDERSON, ARTHUR ANDERSON RETIREMENT PLANNING INC., DANNY BAXLEY, MARSHA BAXLEY, BELLANOVA ENTERPRISES. LLC, MILLARD KEVIN BLACKBURN, MIKE BLOCK. ROBERT BODACK. MATT BONDURANT, DANIEL BOOKOUT, DARYL BORNSTEIN, JANALYN BORNSTEIN, STEPHEN WAYNE BRADSHAW. TIMOTHY L. BRADSHAW. J. WENDELL BRIGANCE. JACK BROWN. JEFF BROWN, RANDY CHATAGNIER. CLR GROUP. AARON F. COOPER, DANIEL S. DARK, MARY DEAN. DENNIS DEGOOD. CRAIGE DEMOSS. TIMOTHY S. DEMPSEY, JAMES P DILUIGI, EAGLE FINANCIAL SERVICES. ESTATE PRESERVATION SERVICES, ROBERT C FRANK, FRANKLIN ASSET EXCHANGE, LLC. FREEDOM CAPITAL, LLC. MICHAEL GAUNTT, JIM GIBSON, | 1 05 CV 2705 |

CIVIL ACTION NO 2705

KEITH GIBSON, STEVE GILLEY,
GILLEY & ASSOCIATES, STEVE
GILLEY & ASSOCIATES, LLC,
VICTOR GRAHAM, GARY G GRIM,
DONNA HAYNES, DAVID R HEAD,
BENNY HOLLAND, SCOTT
HOLLENBECK, PAUL W HOPKINS,
MICHAEL HOVANIC, JAMES
HUTTON, INFINITE RESOURCES,
WILLIAM ERIC ISPHORDING, J K.
GIBSON & ASSOCIATES, INC ,
CARL E JENKINS, WALTER JONES,
JERRY G. KETRON, MIKE KEYS,
FRED J KING, RUSSELL A.
KUCHERA, BARRIE M LANGE,
MICHAEL R. LAWSON, LEVONDA
LEAMON, LEGACY ESTATE
CONCEPTS, INC., WILLIAM LISBY,
STANLEY LOTT, JAMES E. LUSH,
SANDRA K. LUSH, CLARENCE J
LYON, II, ANTHONY MACKENZIE,
EUGENE MAESTAS, ROBERT M.
MANARDO, HAL MAYER, LARRY
MAYES, JAMES MEYER, PETER J
MILLER, JEFF MITCHELL, BILL
NAUMANN, NEMO TRUST,
NETWORK INSURANCE &
ASSOCIATES, ROGER PARKS,
SCOTT PECKHAM, JAN PETERSEN,
REBECCA PLUMMER, JERRY W.
POSS, PAUL R PRIESS, PETE
PURCELL, ELISABETH RAINEY,
JAMES RAINEY, ROBERT
RAWSON, DENNIS RAYNOR,
BRUCE F. RUARK, LORI SALTER,
SCOTTIE SALTER, LAWRENCE R
SAMPSON, ANGELO T SANTOS,
JAMES SEIFRID, SENIOR
FINANCIAL NETWORK, BRYAN
SHEPLEY, DALE SILVERS, JULIA

1501494 3

| | |
|---|---|
| SLATER, JEROME D. SPITZER, JACOB STOCKHAM, TIMOTHY P. STOHS, STRANT, INC., JUDITH SULLIVAN, BENJAMIN E. SUMNER, INC., JOEL TEAGUE, HUGH THACKER, RAYMOND VIGIL, GARY P. WALKER, RONNIE C WARD, SHELVA J. WARD, STAN WARM, CRAIG WARNER, MICHAEL A. WELLS, TOMMY WHITE, KENNETH D. WHITT, JENNIFER WISE, DAVID R WOMACK, LEO YIRKA, DAVID M. ALVARADO, CONNIE W. BUNGE, ROBERT A. CARRILLO, JAY CASTRO, KEN CHIN, PETER B. DAENZER, JESSE FIEDOR, JACK FRANK, BERNARD G. GROSS, THOMAS C HEARD, LINDA L HOLLOWAY, LAURA A. JONES, LISA G LERNER, IGNACIO D. MALDONADO, FRED C. MARSH, JAMES MEAD, DENNIS A MEHRINGER, K. DAVID METCALFE, JEFFREY MITCHELL, W MICHAEL PENCE, WILLIAM J ROBERTS, SUKHDEV SINGH, JENNIFER WISE<br><br>                  Defendants. | |

## COMPLAINT FOR DISGORGEMENT OF ILL-GOTTEN GAINS

S. Gregory Hays ("Receiver"), the court-appointed Receiver for Mobile

Billboards of America, Inc.; International Payphone Corporation, Tiger Media,

Inc.; Reserve Guaranty Trust; California Mobile Billboards, Inc , and, Western

1501494 3

Reserve Guaranty Trust (collectively, the "Receiver Entities"), files this Complaint against each of the following Defendants  David E  Adam, Jackie Adams, AF, Inc , Alternative Financial Concepts, LLC, Arthur Anderson, Arthur Anderson Retirement Planning Inc., Danny Baxley, Marsha Baxley, Bellanova Enterprises, LLC, Millard Kevin Blackburn, Mike Block, Robert Bodack, Matt Bondurant, Daniel Bookout, Daryl Bornstein, Janalyn Bornstein, Stephen Wayne Bradshaw, Timothy L  Bradshaw, J. Wendell Brigance, Jack Brown, Jeff Brown, Randy Chatagnier, CLR Group, Aaron F. Cooper, Daniel S  Dark, Mary Dean, Dennis Degood, Craige Demoss, Timothy S. Dempsey, James P  Diluigi, Eagle Financial Services, Estate Preservation Services, Robert C. Frank, Franklin Asset Exchange, LLC, Freedom Capital, LLC, Michael Gauntt, Jim Gibson, Keith Gibson, Steve Gilley, Gilley & Associates, Steve Gilley & Associates, LLC, Victor Graham, Gary G. Grim, Donna Haynes, David R. Head, Benny Holland, Scott Hollenbeck, Paul W  Hopkins, Michael Hovanic, James Hutton, Infinite Resources, William Eric Isphording, J.K. Gibson & Associates, Inc , Carl E  Jenkins, Walter Jones, Jerry G  Ketron, Mike Keys, Fred J. King, Russell A  Kuchera, Barrie M. Lange, Michael R. Lawson, Levonda Leamon, Legacy Estate Concepts, Inc., William Lisby, Stanley Lott, James E  Lush, Sandra K. Lush, Clarence J. Lyon, II, Anthony Mackenzie, Eugene Maestas, Robert M  Manardo, Hal Mayer, Larry Mayes, James Meyer, Peter J  Miller, Jeff Mitchell, Bill Naumann, Nemo Trust, Network

1501494 3

- 4 -

Insurance & Associates, Roger Parks, Scott Peckham, Jan Petersen, Rebecca

Plummer, Jerry W. Poss, Paul R. Priess, Pete Purcell, Elisabeth Rainey, James

Rainey, Robert Rawson, Dennis Raynor, Bruce F Ruark, Lori Salter, Scottie

Salter, Lawrence R Sampson, Angelo T. Santos, James Seifrid, Senior Financial

Network, Bryan Shepley, Dale Silvers, Julia Slater, Jerome D. Spitzer, Jacob

Stockham, Timothy P. Stohs, Strant, Inc . Judith Sullivan, Benjamin E Sumner,

Inc , Joel Teague, Hugh Thacker, Raymond Vigil, Gary P Walker, Ronnie C

Ward, Shelva J. Ward, Stan Warm, Craig Warner, Michael A. Wells, Tommy

White, Kenneth D. Whitt, Jennifer Wise, David R Womack, Leo Yirka, David M.

Alvarado, Connie W. Bunge, Robert A Carrillo, Jay Castro, Ken Chin, Peter B

Daenzer, Jesse Fiedor, Jack Frank, Bernard G Gross, Thomas C Heard, Linda L

Holloway, Laura A Jones, Lisa G Lerner, Ignacio D. Maldonado, Fred C Marsh,

James Mead, Dennis A. Mehringer, K. David Metcalfe, Jeffrey Mitchell, W

Michael Pence, William J. Roberts, Sukhdev Singh, Jennifer Wise   In support of

his Complaint, the Receiver shows this Court the following

## **Background and Overview**

1

   This action is the result of a fraudulent investment offering involving the

sale of mobile billboard investments targeting retirees and seniors   Between 2001

and 2004, more than $60 million in bogus investments were sold to unsuspecting

1501494 3

investors, many of whom invested most or all of their retirement funds into this venture, which was represented to them to be safe and secure.

2

The bogus billboard investments were sold through a network of independent sales agents, who, as a general rule, were members of organizations put together by "master sales agents." The sales commission paid on each sale totalled approximately 27%, which was typically paid to the master sales agent, who, in turn, made commission payments to the individuals in its sales organization entitled to receive a portion of the commission for a specific sale. The commission amount, which is extremely high when compared to legitimate investment offerings, was not disclosed to the investors in the sales process

3.

In addition to commission payments, agents were also offered bonuses for reaching certain sales objectives. Typically, these bonuses were paid directly to the individual sales agent

4

Each of the Defendants is a sales agent or agency that received commissions and/or bonus payments as a result of the sale of fraudulent mobile billboard investments.

1501494 3

5

The investments sold by the Defendants were securities and, for a variety of reasons, the sales were made in violation of federal securities laws.  Among other things, the Defendants were selling unregistered securities, and the agencies and agents, themselves, were not registered as securities dealers and brokers Moreover, the Defendants were selling investments and being paid commissions that were premised on a fraudulent scheme

6.

Without the active solicitation of investors and subsequent sales made by these Defendants, the Ponzi scheme, which defrauded investors out of over $60 million, would not have occurred.

7.

The cumulative amount of commissions paid to these Defendants exceeds $19 million.

8.

On September 21, 2004, the United States Securities and Exchange Commission ("SEC") filed an enforcement action in this Court styled *SEC v Mobile Billboards, et. al , Civil Action No  1 04-CV-2763-WBH* ("SEC Litigation")  On that same date, this Court entered an order ("Receivership Order") appointing the Receiver as receiver for Mobile Billboards of America,

1501494 3

Inc , International Payphone Corporation (a/k/a Outdoor Media Industries) and

Reserve Guaranty Trust.  In orders entered on or about October 18, 2004 and

February 7, 2005, this Court expanded the receivership to include additional

affiliated entities, Tiger Media, Inc., California Mobile Billboards, Inc. and

Western Reserve Guaranty Trust, which are all subject to the terms and provisions

of the Receivership Order.

9.

The Receiver has filed this action seeking the recovery of the commissions

paid to each of the Defendants.

## JURISDICTION AND VENUE

10

This action is ancillary to the receivership   Accordingly, this Court has

jurisdiction over the parties and the subject matter of this action   In re Alpha

Telcom, Inc., et al., No  CV 01-1283-PA, 2004 U S  Dist. LEXIS 20002 (D  Or

August 18, 2004);  Quilling v. Grand Street Trust, et al , No. 3.04 CV 251, 2005

WL 1983879 (W.D.N.C  August 12, 2005).

11.

In addition, this action arises from and is directly related to the SEC

Litigation, which provides for nationwide service of process under federal

securities laws.  15 U S.C. § 77v(a),  15 U.S.C  § 78aa

1501494 3

12

Venue is proper in this Court.

## **Factual Allegaions**

### The Investment Offering

13.

Beginning in the spring of 2001 and continuing into August 2004, Mobile Billboards of America, Inc. ("MBA") sold mobile billboard investments in various states including North Carolina, Texas and Georgia.

14.

In 2002, MBA and its principals formed California Mobile Billboards, Inc ("CMBI") for the purpose of selling the billboard investments in California. The California sales began in mid-2003 and continued into 2004

15.

As a result of the sales activities promoted by MBA and CMBI, billboard investments were sold to more than 1000 investors, many of whom were retirees living on fixed incomes

16.

As a part of the sales process, Defendants presented potential investors with a disclosure document, referred to below as the "offering circular," purportedly

1501494 3

designed to comply with the "business opportunity" regulations of the Federal Trade Commission and various states

17

In sum, investors purchased a billboard "unit" for $20,000 and simultaneously leased the billboards back to Outdoor Media Industries ("Outdoor Media") for a seven-year term. Investors were told that Outdoor Media would arrange for placement of the billboard on a truck, arrange for advertising and make monthly lease payments to investors that provided a return of approximately 13.49% per year. Outdoor Media was affiliated with MBA and owned and operated by the same people that owned and operated MBA

18.

As a part of the billboard purchase, MBA agreed to repurchase the billboard at the end of the seven-year lease term for the full purchase price. Investors were told that MBA had established the Reserve Guaranty Trust ("RGT") to assure that money would be available to fund this repurchase obligation and that a portion of the purchase money paid by the investor was being deposited into RGT for this purpose

19

Investors were told that MBA paid $5,000 of the initial purchase price to RGT at the inception of the lease to create a sinking fund to support the buy-back.

1501494 3

20.

In consideration for the purported S5,000 payment, RGT issued to the investor a "Trust Secured Certificate" which entitled the investor to "an undivided beneficial interest in the assets of RGT with a liquidation amount of up to [$20,000 times the number of billboards] purchased."

21

RGT's trust assets were purportedly invested to generate profits to fund the buy-back

22

While RGT was touted as being independent, it was controlled by the officers of MBA

23

In truth, MBA's investment program operated as a Ponzi scheme, in that Outdoor Media's mobile billboard business did not generate sufficient revenues to make the monthly lease payments to the investors, but instead relied on new investors' purchase monies to make the promised payments to earlier investors. Using monies paid by recent investors, MBA transferred money to Outdoor Media to fund the lease payments to investors.

1501494 3

24

Moreover, monies had not been deposited into RGT nor had RGT been managed in accordance with the representations made to investors.

25

Throughout the course of the sales process, Defendants provided investors with substantial amounts of false information, including:

a.      There were operating billboards   For example, the MBA offering circular in use by mid 2004, claimed that there were 3,039 "operating mobile billboard Business Opportunities" as of March 31, 2004.  In fact, Mobile Billboards had fewer than 200 billboards operating

b       Billboards were operating in a manner sufficient to fund the lease monthly payments   In fact, purchase monies paid by subsequent investors were funding those payments

c.      Money was being invested in RGT and RGT's investments were performing in a manner sufficient to fund the repurchase obligation. In fact, RGT was woefully under-funded and its few investments were losing money

d       The Property Trustee for RGT was independent   In fact, the Property Trustee was taking direction from MBA's officers and directors.

1501494 3

e.   No investor had ever cancelled or terminated the investment early.  In fact, MBA had refunded several million dollars to investors who sought an early termination of the billboard investment.

f    MBA was a substantial company.  In fact, it was a shell corporation.

g    The mobile billboard investment was safe and secure   In fact, it was a sham.

26

Throughout the course of the sales process, Defendants failed to provide investors with substantial amounts of material information, including:

a.   The amount of the sales commission – i.e , 27% of the purchase price.

b    There were very few operating billboards and even fewer that were actually generating any revenue at all

c.   The actual cost of the billboard frame(s) being purchased for $20.000 was less than $250.

d.   MBA was actually controlling both the leasing company (i.e , Outdoor Media) and the trust (i.e., RGT).

27.

Many, if not all, of the Defendants sold the billboard investments largely to older and retired investors as a passive investment that would increase the income

the investors were receiving on money held in other investments, such as: mutual funds, certificates of deposits, bonds, and retirement accounts.

28.

Many, if not all, of the Defendants persuaded investors to liquidate mutual funds and other secure investments to invest in the billboard investments and to transfer the investors' existing individual retirement accounts to a self-directed IRA provider supplied by MBA or CMBI. In fact, many, if not all, of the Defendants provided investors with the forms necessary to establish self-directed IRAs to hold the billboard investments.

29

Defendants knew, or were extremely reckless in not knowing, that the MBA/CMBI investment program functioned as a Ponzi scheme.

30.

The money used to pay the commissions and bonuses to the Defendants constitutes ill-gotten gains from the fraudulent sales of unregistered securities to unsuspecting investors. Defendants have no legitimate claim to the commissions, as the commissions were paid to them specifically for their role in the illegal sales of the unregistered securities, as described herein.

1501494 3

## COUNT I

### (Accounting)

The allegations of Paragraphs 1 through 30 are incorporated into this Count as if fully set forth herein.

### 31.

As of the date of the filing of this Complaint, the Receiver has performed and continues to perform an investigation and analysis of the use of the proceeds of the fraudulent investment offering, including the payment of commissions and bonuses to the Defendants.

### 32

As a part of his investigation and analysis, the Receiver has endeavored to determine how much money was actually paid to each of the Defendants. Based upon the information currently available to him, the Receiver has made an initial calculation and allocation of the amounts paid to each Defendant.

### 33

The Receiver understands that the information available to him may be incomplete. Accordingly, in or about March 2005, counsel for the Receiver sent a letter to each of the Defendants (and others) asking for an accounting of the amounts received as a result of sales of the MBA billboard investments and demanding the return of those monies.

1501494 3

34

A few of those who received the letter described above complied with the request and provided an accounting and/or repayment of commissions and bonuses, however, most (including the Defendants in this action) did not

35

The Receiver is entitled to an accounting from each of the Defendants, including the return of all monies received, directly or indirectly, from MBA.

36

The Receiver is entitled to recover prejudgment interest from each Defendant from the date of the receipt of each payment of commission or bonus

## COUNT II

### (Unjust Enrichment/Constructive Trust)

The allegations of Paragraphs 1 through 36 are incorporated into this Count as if fully set forth herein.

37

The commissions and bonuses paid to each of the Defendants are proceeds that were unlawfully obtained from investors by means of artifice and fraud. Accordingly, those proceeds, including the commissions and bonuses received by each of the Defendants, are impressed with a constructive trust.

1501494 3

38.

The Defendants have been unjustly enriched.

39

The Receiver is entitled to recover the commissions and bonuses paid to each Defendant.

40.

The Receiver is entitled to recover prejudgment interest from each Defendant from the date of the receipt of each payment of commission or bonus

## **COUNT III**

### **(Fraudulent Conveyance)**

The allegations of Paragraphs 1 through 36 are incorporated into this Count as if fully set forth herein.

41

The payments of commissions and bonuses to each of the Defendants are fraudulent conveyances.

42.

The Receiver is entitled to recover the commissions and bonuses paid to each Defendant

1501494 3

43

The Receiver is entitled to recover prejudgment interest from each

Defendant from the date of the receipt of each payment of commission or bonus

WHEREFORE, S. Gregory Hays, Receiver, requests and demands the entry

of a judgment in his favor as follows:

1. On Count I, that each of the Defendants be required by this Court provide an accounting of all commissions and bonuses received as a result of the sale of subject billboard investments and, further, requiring that such amounts be disgorged and turned over to the Receiver, along with prejudgment interest.

2. On Count II, that damages be awarded to the Receiver against each Defendant in an amount equal to all commissions and bonuses received, plus prejudgment interest

3. On Count III, that damages be awarded to the Receiver against each Defendant in an amount equal to all commissions and bonuses received, plus prejudgment interest.

4. That the Court award such other and further relief as is deemed just equitable and proper.

This 18th day of October, 2005.

TROUTMAN SANDERS LLP

J. DAVID DANTZLER, JR.
Georgia Bar No. 205125
MATTHEW R CLARK
Georgia Bar No 141401

1501494 3

Attorneys for Receiver

Bank of America Plaza, Suite 5200
600 Peachtree Street. N.E
Atlanta, GA  30308-2216
(404) 885-3000 (voice)
(404) 885-3900 (facsimile)

1501494 3