# Exhibit A

LEXSEE 2004 US DIST LEXIS 20002

**IN RE ALPHA TELCOM, INC., et al.**

CV 01-1283-PA

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF OREGON**

**2004 U.S. Dist. LEXIS 20002; Fed. Sec. L. Rep. (CCH) P92,913**

**August 18, 2004, Decided
August 17, 2004, Filed**

**SUBSEQUENT HISTORY:** Later proceeding at In re Alpha Telcom, Inc., 2005 U.S. Dist. LEXIS 3844 (D. Or., Feb. 1, 2005)

**PRIOR HISTORY:** SEC v. Alpha Telcom, Inc., 187 F. Supp. 2d 1250, 2002 U.S. Dist. LEXIS 2617 (D. Or., 2002)

**DISPOSITION:** The court granted the Receiver's Motion for Disgorgement as modified.

**COUNSEL:** [*1] For Securities and Exchange Commission, Plaintiff: Karen Matteson, Securities and Exchange Commission, Los Angeles, CA.

For Alpha Telecom, Inc., an Oregon corporation, Defendant: Richard M. Layne, Layne & Lewis, LLP, Portland, OR; David L. Osias, Allen Matkins, San Diego, CA.

For American Telecommunications Company, Inc., a Nevada corporation, Defendant: David L. Osias, Allen Matkins, San Diego, CA.

For Strategic Partnership Alliance, LLC, a Nevada Limited Liability Company, Defendant: David L. Osias, Allen Matkins, San Diego, CA.

For SPA Marketing, LLC, a Nevada Limited Liability Company, Defendant: David L. Osias, Allen Matkins, San Diego, CA.

For Paul S. Rubera, Defendant: Robert C. Weaver, Jr., Garvey Schubert & Barer, Portland, OR.

For Robert A. McDonald, Defendant: Kristen L. Winemiller, Attorney, Portland, OR.

For Daniel Korth, Intervenor Defendant: John W. Stephens, Esler Stephens & Buckley, Portland, OR; Kim T. Buckley, Esler Stephens & Buckley, Portland, OR; Michael J. Esler, Esler Stephens & Buckley, Portland, OR.

For Jeffrey Massey, Intervenor Defendant: John W. Stephens, Esler Stephens & Buckley, Portland, OR; Kim T. Buckley, Esler [*2] Stephens & Buckley, Portland, OR; Michael J. Esler, Esler Stephens & Buckley, Portland, OR.

For Kathleen Whorley Sommer, Claimant: Harry N. Stone, Phoenix, AZ.

For Jay Gianni, President of Gianni Financial Services, Inc. Claimant.

For Manuel Mendoza, Intervenor: William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

For Neil Bagchi, Intervenor: William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

For Inland Estate Services, Inc., Intervenor: William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

For Jerrold Williams, Intervenor: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

For West Coast Distributors, Intervenor: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

For Webb Financial Services, Intervenor: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Case 1:05-cv-02705-CAP   Document 275-1   Filed 11/27/06   Page 3 of 12

Page 2
2004 U.S. Dist. LEXIS 20002, *; Fed. Sec. L. Rep. (CCH) P92,913

For USA Estate Plans & Asset Protection, Inc., Intervenor: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, [*3] Portland, OR.

For Taylor, Inc., Intervenor: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

For Owen Snyder, Intervenor: Owen Snyder, Pro se, St. Peters, MO.

For Bruce Ruark, Intervenor: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

For Pro-Formance Financial Group, Intervenor: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

For William Orcutt, Intervenor: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

For Harold Norris, Intervenor: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

For Nealan Midkiff, Intervenor: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

For Long Island Trust, Intervenor: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR. [*4]

For Liberty Marketing, Inc., Intervenor: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

For Andrew Jennings, Intervenor: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

For James Grimes, Intervenor: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

For Larry Goto, Intervenor: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

For Samir Ghosh, Intervenor: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

For Excell Inv., Inc., Intervenor: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

For Financial Futures, Inc., Intervenor: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

For Judy Dahl, Intervenor: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, [*5] OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

CSI Marketing, Intervenor: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Cornerstone Senior Estate Planning, Intervenor: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Bucholtz Insurance Agency, Intervenor: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Jesse Brandin, Intervenor: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Fredrick Beegle, Intervenor: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Mary Abdallah, Intervenor: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Secured Financial Concepts, Incorporated, Movant: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Vincent [*6] Lewis & Associates, Movant: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Case 1:05-cv-02705-CAP   Document 275-1   Filed 11/27/06   Page 4 of 12

Page 3
2004 U.S. Dist. LEXIS 20002, *; Fed. Sec. L. Rep. (CCH) P92,913

James A. Husek, Movant: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

William J. Jones, Movant: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Michael Gauntt, Movant: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

National Marketing Solutions, Movant: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

MDS Marketing, Movant: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

G.I Secure, Movant: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Jeffrey D. Mitchell, Movant: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, [*7] Portland, OR.

Denielle Carr, Movant: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

FL Underwriting, Movant: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Dennis Baugher, Movant: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Lance Lipoufski, Movant: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Ernest Bustos, Movant: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Dennis Watts, Movant: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Ray Vallejo, Movant: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Kathleen Sommer, Movant: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, [*8] OR.

Priscilla Ross, Movant: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Kevin Rimple, Movant: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

David G. Ray, Movant: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Thell Pruitt, Movant: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Tom Park, Movant: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

John Lilja, Movant: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Brian Ladah, Movant: Adrienne S. Leight, Morgenstein & Jubelirer LLP, San Francisco, CA; Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; John S. Worden, Morgenstein & Jubelirer LLP, San Francisco, CA; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Michael Girouard, Movant: Jill [*9] S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Allen C. Gasper, Movant: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Rick Dyer, Movant: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Thomas Durso, Movant: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Case 1:05-cv-02705-CAP   Document 275-1   Filed 11/27/06   Page 5 of 12

Page 4

2004 U.S. Dist. LEXIS 20002, *; Fed. Sec. L. Rep. (CCH) P92,913

Andrew Constantinou, Movant: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Chris Cameron, Movant: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Anthony Barboni, Movant: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Richard Wilson, Movant: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Frank Sloan, Movant: Jill S. Gelineau [*10] Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Ivan Shepard, Movant: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Marvin Rolnick, Movant: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Shari Mattingly Bevan, Movant: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Joe Brandenburg, Movant: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Judie Allen, Movant: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Robert Tripode, Movant: Jill S. Gelineau Schwabe Williamson & Wyatt PC, Portland, OR; William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Wes Wyatt, Agent, Movant: Harry N. Stone, Phoenix, AZ.

Inland Estate Services, Inc., Movant: William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Neil Bagchi, Movant: William [*11] J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

Manuel Mendoza, Movant: William J. Ohle, Schwabe Williamson & Wyatt, Portland, OR.

**JUDGES:** THE HONORABLE OWEN M. PANNER, U.S. DISTRICT COURT JUDGE.

**OPINION BY:** THE HONORABLE OWEN M. PANNER

**OPINION:**

### OPINION AND ORDER

PANNER, J.

The Receiver appointed to manage the affairs of Alpha Telcom, Inc., moves for disgorgement of approximately $ 21 million, plus interest, from 165 former sales agents. n1 The Securities and Exchange. Commission ("SEC") joins in that motion. The background facts are discussed in SEC v. Alpha Telcom, Inc., 187 F. Supp. 2d 1250 (D. Or. 2002), aff'd, 350 F.3d 1084 (9th Cir. 2003).

> n1 For various reasons, Plaintiffs have now dismissed the motion as to former agents Judie Allen Dow, Ralph Shaul, Frank Sloan, Ivan Shepard, Joe Combest, Rick Dyer, Roger Goodwin, and James Grimes. The SEC, but not the Receiver, also withdrew the motion as to Dennis Watts.

The motion targets only those agents who allegedly received [*12] at least $ 25,000 in commissions. Other agents were excluded after the Receiver concluded it would cost more to pursue them than was likely to be recovered, or the agent could not be located. An agent who received $ 25,000 in commissions would have sold approximately $ 250,000 worth of payphones, at $ 5,000 each (*i.e.*, at least 50 payphones). Some agents received considerably more than $ 25,000 in commissions.

The court has received numerous objections to the motion.

1. **Personal Jurisdiction and Venue:**

Many agents assert they have no ties to Oregon, hence any proceedings must be commenced in their respective home states. They are mistaken. The claims by the Receiver and the SEC (hereafter, "Plaintiffs") are ancillary to the Receivership this court is administering. This court necessarily has jurisdiction over matters pertaining to that Receivership, and the assets thereof. The Bankruptcy case also is situated in Oregon. In addition, Alpha Telcom was based in Oregon, the agent's sales contracts were with a company headquartered in Oregon

Case 1:05-cv-02705-CAP    Document 275-1    Filed 11/27/06    Page 6 of 12

Page 5

2004 U.S. Dist. LEXIS 20002, *; Fed. Sec. L. Rep. (CCH) P92,913

and contemplated an ongoing relationship, and the contracts specified that Oregon law would govern any dispute. Finally, I note [*13] that nationwide service is authorized in most securities law cases. See 15 U.S.C. § 77v(a); 15 U.S.C. § 78aa. Ties to the United States, as a whole, are sufficient to support jurisdiction under a nationwide service statute.

The court also must decide whether Oregon is a proper venue. With 165 agents scattered across the country, no single venue will be convenient for everyone, yet the motion must be heard somewhere. It is not practical for many courts to each decide the same questions, and perhaps reach inconsistent results. SEC v. Vigman, 764 F.2d 1309, 1317-18 (9th Cir. 1985). Oregon is the most logical choice. This will not cause undue hardship for the agents. There is no need for them to appear in person in Oregon, and little occasion for discovery or live testimony.

2. **Summary Procedures and Failure to Serve Summons:**

The Receiver tried to save money by not formally serving a summons upon each agent. Instead, the Receiver mailed copies of the motion to the agents' last known addresses. The agents contend the failure to serve them with summons is fatal. I disagree. A formal summons and complaint [*14] are required to commence an "action." SEC v. McCarthy, 322 F.3d 650, 656-57 (9th Cir. 2003). The motion before the court is not an independent action. It is part of the Receivership proceeding, and seeks to recover funds the agents received from Alpha Telcom that they allegedly have no legitimate claim to possess. The agents are what is sometimes referred to as "nominal defendants." See SEC v. Colello, 139 F.3d 674, 676-77 (9th Cir. 1998).

What is important here is not the precise form of notice, but that the agents received notice of the motion, were advised what was at stake, and given a meaningful opportunity to be heard. See SEC v. Wencke, 783 F.2d 829, 838 (9th Cir. 1986). n2

---

n2 Although the procedure employed was not fatally deficient, it should not be emulated. The Receiver seemingly could have accomplished the same result, with far less risk, by invoking FRCP 4(d) and asking the agents to waive service, or else they must pay the additional cost incurred for personal service. In most cases in which summary procedures have been employed, the individuals were already participating in the litigation in some capacity. Even certified mail would have been preferable, supplying some proof that the mailing was received.

---

[*15]

A more serious flaw is the difficulty in proving that an agent actually received notice of the motion. The Receiver did not even send the motions by certified mail. Many agents responded to the motion by filing objections or other material. The court can infer they received actual notice. In addition, the Receiver previously sent multiple mailings to the same list, and updated it when necessary. The court also required the Receiver to send a follow-up mailing to the agents. There is a rebuttable presumption that mail, properly addressed, has been delivered. In addition, the agent contracts often specified an address for serving notice upon the agent in connection with the contract. Finally, many agents are in regular contact with each other, as evidenced by communications the court has received.

It appears that the vast majority, if not all, of the agents received actual notice of the pending motion. For that reason, I will assume the motion is properly before the court. See EEOC v. Pan American World Airways, Inc., 897 F.2d 1499, 1508 (9th Cir. 1990) ("Actual knowledge of the pendency of an action removes any due process concerns about notice of the litigation"). [*16] However, I express no opinion regarding the result if a disgorgement order were collaterally attacked by an agent who truly was unaware of the motion, and had no opportunity to defend. The Receiver assumed that risk by proceeding in this manner.

The Receiver further complicated matters by mailing the motions on December 24, addressed to locations scattered around the country, and advising the agents that any opposition had to be received by this court within 11 calendar days, *i.e.*, by January 4. Given the holidays and bad weather, many agents were fortunate even to receive the motion by that date, let alone to have an opportunity to retain counsel and mount a defense. This deadline was not calculated to afford the agents a meaningful opportunity to be heard. Cf. Mullane v. Hanover, 339 U.S. 306, 314-15, 94 L. Ed. 865, 70 S. Ct. 652 (1950).

The court then interceded, giving the agents an extension of time until February 2, 2004, and requiring the Receiver to furnish them notice of that extension. The court heard oral argument on February 18, 2004, and then gave the agents until March 9, 2004, to file any additional materials. That deadline was later extended to April 26, 2004. With the court's [*17] permission, additional materials also were filed on May 4, 2004.

Over the Receiver's objections, the agents were allowed to intervene as defendants in this case, and many have done so. Discovery was very limited, as most issues implicated by this motion are legal, not factual. However, the court did establish a procedure for agents to

Case 1:05-cv-02705-CAP   Document 275-1   Filed 11/27/06   Page 7 of 12

Page 6

2004 U.S. Dist. LEXIS 20002, *; Fed. Sec. L. Rep. (CCH) P92,913

contest the amount of commissions allegedly received. Many agents are represented by counsel, who capably briefed and argued their defense.

Ultimately, the agents had a meaningful opportunity to be heard regarding the motion, the Receiver's missteps notwithstanding.

### 3. Statute of Limitations, Laches:

The disgorgement motion is not barred by the statute of limitations or laches. See SEC v. Rind, 991 F.2d 1486 (9th Cir. 1993). Nor was the motion unduly delayed. The Ninth Circuit's opinion, affirming my determination that Alpha Telcom was selling unregistered securities, was issued December 5, 2003. The disgorgement motion was filed later that month.

### 4. Bankruptcy

Some agents have filed for bankruptcy. Plaintiffs dismissed their motion as to three. As for the other agents in bankruptcy, the SEC may recover [*18] a judgment against them, notwithstanding the automatic stay; however, any attempt to collect on that judgment remains subject to the bankruptcy proceeding. See SEC v. Cross Financial Services, 908 F. Supp. 718 (C.D. Calif. 1995).

### 5. Default

Plaintiffs contend they are entitled to prevail, by default, against any agent who did not respond to the motion. I disagree. Plaintiffs still must establish that they are entitled to the relief sought. The rulings I make regarding the agents who did appear will apply to the absent agents as well.

### 6. Theories on Which the Plaintiffs Seek Relief

Plaintiffs seek relief under two theories: unjust enrichment and fraudulent transfer. Typically, in securities cases, disgorgement is employed to deter violations of securities laws by depriving violators of their ill-gotten gains. Although disgorged funds may be used to compensate victims for their losses, such compensation is a distinctly secondary goal. SEC v. Fischbach Corp., 133 F.3d 170, 175 (2nd Cir. 1997).

Plaintiffs elected not to formally n3 accuse the agents of any wrongdoing, or to shoulder the burden of proving malfeasance. [*19] Instead, Plaintiffs' request for disgorgement assumes the agents received money from a wrongdoer (Alpha Telcom), which the agents have no legitimate claim to, and must therefore return. In other words, they are alleged to have been a gratuitous donee of Alpha Telcom's ill-gotten gains. Ordinarily, the gratuitous donee theory is invoked when third parties received gifts from the wrongdoer, or were helping to hide assets for him, or perhaps received payments for aiding in an illicit scheme. Cf. SEC v. Better Life Club of America, Inc., 995 F. Supp. 167, 181-84 (D. D.C. 1998) (operator of Ponzi scheme used proceeds to buy expensive gifts for girlfriend, and to establish trust fund for benefit of wrongdoer's children; disgorgement ordered). The present case is different.

> n3 Despite that, the Receiver's briefs and letters to the court are permeated with accusations of wrongdoing. That is inappropriate. The Receiver has not sought to prove those accusations, nor are they germane to the legal theories he advances. The only apparent reason for including those allegations is to bias the court. The Receiver's briefs are similarly permeated with assertions that the investors are all impoverished and elderly. That, too, is not germane to the legal theories the Receiver asserts in this motion. It also is an oversimplification. Many investors undoubtedly suffered great harm. I've received numerous letters from them. However, the investors also include wealthy doctors, large trust funds, and others who were not impoverished. The reality is more complex than the black and white portrait the Receiver paints.

[*20]

Crucial to the Plaintiffs' case is the contention that the agents have no legitimate claim to the funds they received. "The creditor plaintiff must show that the nominal defendant has received ill gotten funds *and* that he does not have a legitimate claim to those funds." SEC v. Colello, 139 F.3d at 677 (emphasis in original). Plaintiffs bear the burden of proving the absence of a legitimate claim. It is not an affirmative defense. Id.

The agents deny they were gratuitous donees, or unjustly enriched. They contend they earned the commissions. Any money received was in accordance with their agent contracts, and paid only after Alpha Telcom received money from the investor. The agents also note that other employees of Alpha Telcom were not asked to return their salaries, nor were equipment suppliers required to return the payments they received.

Plaintiffs argue that Alpha Telcom lost money on its telephone operations, and was a Ponzi scheme and an unregistered security. Consequently, they reason, the company received no value from sales of new phones, notwithstanding that Alpha Telcom received large infusions of cash as a result of those sales. Rather, each [*21] sale merely increased the company's liabilities and legal exposure. That's an interesting theory, but not persuasive.

Case 1:05-cv-02705-CAP    Document 275-1    Filed 11/27/06    Page 8 of 12

Page 7

2004 U.S. Dist. LEXIS 20002, *; Fed. Sec. L. Rep. (CCH) P92,913

If a salesman generated large orders for his company, but for reasons beyond his control the company eventually lost money on those orders, we wouldn't say that the salesman provided no value to the company, and therefore must return his salary and commission.

Plaintiffs argue that it is different here, because the agents were participants in a Ponzi scheme. However, Plaintiffs haven't charged the agents with wrongdoing, nor shouldered the burden of proving scienter.

Plaintiffs also contend that the services of the agents were of no value because those services helped to perpetrate a fraud. The same might be said of every person who furnished goods or services to Alpha Telcom, from the company that provided the payphones, to the people who serviced them, on down to the pizza delivery driver who brought food to meetings attended by Alpha Telcom's key players. They all allegedly helped to perpetrate a fraud, knowingly or otherwise.

There is one critical distinction, however. The services provided by the agents were, in hindsight, illegal. They could not lawfully sell [*22] unregistered securities. It is a strict liability offense, regardless of whether they knew it was wrong. By contrast, it was not illegal to deliver pizza or to install telephones, even if those services may unknowingly have helped to perpetrate a fraud.

The agents were paid for furnishing illegal services. The law cannot permit them to benefit from the sale of unregistered securities. Consequently, the agents must disgorge the amount by which they were unjustly enriched.

Admittedly, this tends to make the agents guarantors of the products they sell. However, it also will make sales agents cautious, and they are in an ideal position to curb abuses. If an agent has doubts about the integrity of the product, or whether it is an unregistered security, the agent should not sell the product. Faced with the risk of disgorgement, due diligence might really be diligent, instead of an exercise in papering the file. This approach is not unprecedented in the law. For instance, modern product liability laws make retailers strictly liable, not just the manufacturer of the product.

Plaintiffs' alternative theory is fraudulent transfer. I do not find that theory persuasive. However, there is little [*23] to be gained from an extensive discussion, as the end result is the same under either theory.

### 7. Computing the Amount Owed

Plaintiffs bear the initial burden of showing that disgorgement is proper, and the approximate amount by which each agent was unjustly enriched. The agents can then attempt to refute this evidence. "The SEC bears the ultimate burden of persuasion that its disgorgement figures reasonably approximate the amount of unjust enrichment." SEC v. Thomas James Associates, Inc., 738 F. Supp. 88, 93 (W.D.N.Y. 1990).

Some agents dispute the amount of commissions received, or the purpose for which they received those payments. I previously established a process for resolving such disputes. If an agent received $ 50,000 or less, and in good faith disputed the amount claimed, the Receiver had to furnish evidence of the amounts paid. For those agents who allegedly received more than $ 50,000, the burden was shifted to the agent to furnish evidence of a discrepancy, and the Receiver then had to verify the amounts.

In several cases, the Receiver accepted the amounts acknowledged by the agent, rather than litigate over a few thousand dollar discrepancy, [*24] and adjusted his claims accordingly. In a few cases, the Receiver declined to reduce the claim, and furnished the agent with the records that allegedly support the Receiver's computations.

I will not resolve those few remaining disputes in this opinion, preferring to focus upon issues applicable to all agents. Within 20 days after this opinion is filed, any agent who disputes the amount of commissions attributed to that agent may submit affidavits and documentary evidence supporting their position. The Receiver then has 10 days to respond. The court will decide the amount the agent is accountable for. n4

---

n4 The court is aware of disputes regarding agents Neil Bagchi, Allan Gasper, Manuel Mendoza, William Orcutt, Mary Abdallah, Secured Financial Concepts, Steven LeBaron, West Coast Distributors, and Robert Phillips. Any challenge to the amount received must be in good faith, or sanctions may be imposed.

---

### 8. Good Faith and Due Diligence

The agents contend they acted in good faith, relying upon legal [*25] opinions furnished by Alpha Telcom from two attorneys who said it was not a security, and an opinion from an accounting firm that said everything was kosher and the claimed tax credits were proper. Some agents say they made other inquiries, such as contacting the Better Business Bureau, Dun & Bradstreet, speaking to people in the industry, touring Alpha Telcom's facilities, reading decisions by state agencies dismissing claims against Alpha Telcom, contacting their state's attorney general, etc.

Case 1:05-cv-02705-CAP   Document 275-1   Filed 11/27/06   Page 9 of 12

Page 8
2004 U.S. Dist. LEXIS 20002, *; Fed. Sec. L. Rep. (CCH) P92,913

Some of this "due diligence" is clearly malarkey. For instance, some agents say they relied upon a court decision issued a year after Alpha Telcom went bankrupt. n5 Some agents undoubtedly were sophisticated enough to have known something was likely amiss, but didn't care so long as they continued to receive large commissions. Still, Plaintiffs chose not to shoulder the burden of proving bad faith. Accordingly, for purposes of this motion I assume the agents acted in good faith.

n5 SEC v. ETS Payphones, Inc., 300 F.3d 1281 (11th Cir. 2002), reversed sub *nom.* SEC v. Edwards, 540 U.S. 389, 157 L. Ed. 2d 813, 124 S. Ct. 892 (2004). Prior to August 2002, an agent searching for published decisions regarding payphones would have found the district court opinion, which held that ETS was illegally selling securities and defrauding investors, and enjoined further sales. SEC v. ETS Payphones, Inc., 123 F. Supp. 2d 1349 (N.D. Ga. Nov. 20, 2000).

[*26]

Good faith is not a defense, in itself. See SEC v. Harwyn Industries Corp., 326 F. Supp. 943, 956 (S.D.N.Y. 1971) (bona fide but mistaken belief in the legality of a transaction is no defense to an action by the SEC). Nevertheless, the agent's good faith may be considered as a factor in balancing any equities, and in deciding whether to allow a setoff for expenses.

9. **Setoff for Expenses**

The agents contend they are entitled to a setoff for expenses they incurred in selling payphones. They are not "entitled" to a setoff. However, the court has some discretion to allow a reasonable setoff, if appropriate under the circumstances. See SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1474-75 (2d Cir. 1996); SEC v. Huffman, 996 F.2d 800, 803 (5th Cir. 1993); Thomas James, 738 F. Supp. at 93.

Disgorgement may not exceed the amount by which the agent was unjustly enriched, plus interest. Hateley v. SEC, 8 F.3d 653 (9th Cir. 1993); SEC v. Softpoint, Inc., 958 F. Supp. 846, 867 (S.D.N.Y. 1997). "Any further sum would constitute a penalty assessment." SEC v. Blatt, 583 F.2d 1325, 1335 (5th Cir. 1978). [*27] To the extent an agent necessarily and reasonably incurred expenses to earn the commissions he must now disgorge, a setoff may be appropriate in some instances. Otherwise, disgorgement might exceed the amount by which the agent was unjustly enriched. See Thomas James, 738 F. Supp. at 92-94.

Plaintiffs cite numerous cases in which a setoff for expenses was denied. In each case, the defendant was found liable for intentional wrongdoing, *e.g.*, securities fraud or insider trading. Typical of those cases -- and one often cited by other courts -- is SEC v. Great Lakes Equities Co., 775 F. Supp. 211 (E.D. Mich. 1991), which declared that "it is within the district court's authority to disallow expenses incurred in perpetration of a fraud. . . ." Id. at 214, n. 20.

This line of cases is not on point. Despite the mud Plaintiffs hurl at the agents, there has been no finding of intentional wrongdoing. Plaintiffs also rely upon SEC v. Benson, 657 F. Supp. 1122 (S.D.N.Y. 1987), but it is not on point either. In Benson, a CEO who fraudulently diverted corporate funds for personal use was ordered to disgorge the [*28] money he stole. The court denied a setoff for expenses incurred in perpetrating the fraud, such as payments made to co-conspirators. The CEO also argued that he should be required to return only the money still in his possession; he had donated some to his favorite charities, and spent some to expand his stamp collection. The court understandably denied that request. "The manner in which Benson chose to spend his misappropriations is irrelevant . . . Whether he chose to use this money to enhance his social standing through charitable contributions, to travel around the world, or to keep his co-conspirators happy is his own business." Id. at 1134. This is very different from the facts of the instant case.

I conclude that the court has discretion in this instance to allow at least some credit for expenses. I next consider the amount of that credit.

The expenses claimed by the agents varies widely. Some of the agent tax returns viewed by the court would have difficulty withstanding an audit. Some agents appear to have claimed much of their personal living expenses as business deductions. There also were claims for auto expenses exceeding $ 20,000 a year, or large travel [*29] expenses, even though many agents worked out of their homes and sold the product by telephone. Some agents, who sold more than one product, seek to setoff a large percentage of their total business expenses for that year, even though most of those expenses would have been incurred regardless of whether they were selling this particular product.

I seriously considered asking the Receiver to review the claimed expenses, for each agent, and determine which were necessarily and reasonably incurred to earn the disputed commissions. Ultimately, I concluded this was not practical, both in terms of administrative expense and the difficulty in determining which expenses were proper and which were not. Instead, I will establish a uniform setoff for expenses: 10 percent of the first $

Case 1:05-cv-02705-CAP   Document 275-1   Filed 11/27/06   Page 10 of 12

Page 9
2004 U.S. Dist. LEXIS 20002, *; Fed. Sec. L. Rep. (CCH) P92,913

50,000 in commissions received by an agent, and 5 percent of all commissions over that amount. For example, an agent who received $ 75,000 in commissions may claim a setoff of $ 6,250 for out-of-pocket expenses. Some may feel that figure is too high, others will think it too low. The short answer is that this is equity, not rocket science.

### 10. Payments to Sub-Agents

Some agents employed sub-agents [*30] to sell the product. Alpha Telcom remitted commissions to the master agent, who passed a portion on to the sub-agent. The master agents contend they should be responsible only for amounts they personally retained, and not for the amounts they passed through to the sub-agents.

These pass-throughs are essentially a private matter between the master agent and his sub-agents. It is not the Plaintiffs' problem. This also is partly subsumed within the setoff for business expenses. n6

> n6 I also note that some sub-agents were family members of the master agent. In other cases, the master agent was a business, and the sub-agent was the sole shareholder of the business, who passed the money through to himself. Furthermore, many pass-throughs have already been deducted as "business expenses" on the master agent's tax return, partly offsetting that expense.

Of course, if Plaintiffs recover money directly from the sub-agents, they can't collect the identical funds from the master agent. That would be duplicative. n7 However, [*31] I'm not aware of any situation in which the same money is being sought from both.

> n7 To hedge against a possible bankruptcy, Plaintiffs can obtain a disgorgement order against both the master agent and sub-agent. They just can't collect twice for the identical commission.

### 11. Income Tax

The agents request a setoff for taxes paid on the income they are now being required to disgorge. That request is denied. It is a matter between the agents and the IRS (or state officials). The court will not interfere.

### 12. Setoff if Agent Lost Money Buying Payphones

Some agents purchased payphones for themselves or sold them to immediate family members, and lost those funds when Alpha Telcom went bankrupt. The Receiver has generously offered to credit those agents with *a* setoff against their disgorgement obligation, for up to the full amount lost, upon satisfactory proof. The Receiver has already dismissed claims against several agents who lost more money buying telephones than they received [*32] in commissions.

I will leave these (and other) adjustments to the discretion of the Receiver, subject to review by the court if an agent challenges the Receiver's decision.

### 13. Client Obtained a Refund from Alpha Telcom

Some agents say the people to whom they sold payphones eventually were reimbursed, selling their phones back to Alpha Telcom before all the money was gone. A few agents say they even warned clients to get out. That is good to hear, but not a defense to disgorgement of commissions retained by those agents.

### 14. Agent Personally Reimbursed Client for Losses

One agent says he personally (and voluntarily) repaid the losses incurred by the clients to whom he sold payphones. The Receiver has indicated that, upon satisfactory proof, he will credit those amounts. In the meantime, the court will enter a disgorgement order against the agent for the full amount due, and let the Receiver make any appropriate adjustments.

### 15. Being Sued Directly By Former Clients

Many agents say they are being sued by former clients, and contend they should not also be liable for disgorgement. I disagree. The injuries sustained by the former clients [*33] are entirely distinct from the commissions that the agent received. The agent can be liable for both. See SEC v. Perm Central Co., 425 F. Supp. 593, 599 (E.D. Pa. 1976). It is analogous to a malpractice claim against a surgeon. He may be required to refund the amount paid for the surgery, and also be liable for any injury sustained by the patient.

Nevertheless, the Receiver has agreed to credit agents with a setoff for amounts they actually paid to those former clients (as opposed to an unpaid judgment), upon satisfactory proof. Again, the court will enter a disgorgement order for the full amount, and let the Receiver decide whether, and how much, to credit, subject to review by the court. Any such claims must be scrutinized closely, to ensure the payment is a legitimate arm's length transaction, and not collusional.

### 16. Agent is Being Pursued by Regulatory Agencies

Case 1:05-cv-02705-CAP   Document 275-1   Filed 11/27/06   Page 11 of 12

Page 10

2004 U.S. Dist. LEXIS 20002, *; Fed. Sec. L. Rep. (CCH) P92,913

Some agents say they are being sued, or have been disciplined, by regulatory agencies such as the NASD and SEC or by various state regulatory bodies. To the extent an agent has been fined, suspended, or otherwise disciplined by a regulatory body, that is a separate matter from the requested [*34] disgorgement. The remedies are cumulative, not mutually exclusive.

The Receiver has agreed to credit agents for amounts paid to a regulatory body as disgorgement of profits, but not amounts paid for penalties, fines, etc.

Many agents also say they are being pursued by the IRS, for having falsely promoted the telephones as a tax shelter. That does not warrant a setoff.

### 17. Financial Hardship

Every agent who responded to the motion insisted it would be a terrible hardship to disgorge the commissions, every penny of which had already been spent to pay day-to-day living expenses for their family. A few agents provided details, but for many it was just a boilerplate assertion. Even fewer agents provided the detailed net worth statements and other documents required to truly evaluate their ability to pay. A debtor examination might also be required in some cases.

Present income, by itself, is not dispositive. An agent may have limited income yet retain substantial assets, or assets may have been placed in other names to hide them from creditors. An agent can also have limited assets today, yet stand to inherit a million dollars tomorrow. Even if an agent cannot pay [*35] the full amount now, he may at least be capable of making monthly payments. Agents also differ greatly in their standard of living. Inability to pay and still fund the comfortable lifestyle to which one has become accustomed should not be confused with a true inability to pay. I also note that many payphone investors have endured serious hardship, had their standard of living significantly reduced, and often have fewer opportunities to start anew given their advanced age.

Most published decisions treat inability to pay as being relevant only as a defense to a contempt charge once a disgorgement order has been entered, rather than a defense to entry of the order itself. See, e.g., SEC v. AMX, Int'l, Inc., 7 F.3d 71, 73 (5th Cir. 1993); SEC v. Musella, 818 F. Supp. 600 (S.D.N.Y. 1993); SEC v. Robinson, 2002 US Dist LEXIS 12811 (S.D.N.Y. 2002); SEC v. Thorn, 2002 U.S. Dist. LEXIS 21508, 2002 WL 31412439 (S.D. Ohio 2002); SEC v. Inorganic Recycling Corp., 2002 U.S. Dist. LEXIS 15817, 2002 WL 1968341 (S.D.N.Y. 2002); SEC v. Grossman, 1997 US Dist LEXIS 6225 (S.D.N.Y. 1997). Cf. Steffen v. Gray, Harris & Robinson, P.A., 283 F. Supp. 2d 1272, 1282 (M.D. Fla. 2003) [*36] (inability to pay is not a defense to enforcement of a disgorgement order if the contemnor voluntarily created the inability to pay).

I will order disgorgement without regard to an individual agent's present ability to pay the full amount. The Receiver will decide who to collect from, and in what amount, and may negotiate settlements and payment plans when appropriate. I am concerned about some inflammatory statements in the Receiver's briefs and letters that essentially characterize the agents as thieves. Some are, some aren't, but none are charged with fraud in this proceeding. Nevertheless, I am confident that the Receiver can set any personal feelings aside and will fairly and professionally discharge his obligations. The court remains available to resolve any dispute, but these determinations will be made by the Receiver in the first instance.

### 18. Miscellaneous Objections

Some agents argue that the person to whom they sold payphones is wealthy, and could afford the loss. That is not a defense to disgorgement.

One agent claims he spent $ 16,000 "to join an organization to recover phones from the Alpha Telcom estate" and attempt to recoup losses (for myself and [*37] clients), and requests a setoff in that amount. That request is denied.

Some agents argue that disgorgement is not appropriate because the investors have an adequate remedy at law, namely, a direct action for sale of an unregistered security, citing 15 U.S.C. § 77e (c). They contend this provides a fairer remedy, and any money recovered would go directly to the investors, not the Receiver. Even if that were true, the potential availability of other remedies would not preclude Plaintiffs from seeking disgorgement, or a combination of legal and equitable remedies.

Some agents argue that the Receiver stands in the shoes of Alpha Telcom, and has no authority to assert claims on behalf of the investors. Technically, the Receiver is not seeking restitution for the investors, but to recover funds, belonging to Alpha Telcom. Most of those recovered funds will ultimately be paid to the investors, but that doesn't impair the Receiver's right to seek disgorgement from the agents.

Many agents also question why disgorgement should be paid to Alpha Telcom, a wrongdoer, for the benefit of the company's successors. It is not my intent that this money be paid to the persons [*38] who ran the company into the ground. Rather, most of the money recovered should eventually go to the payphone purchasers, and to pay appropriate expenses. For legal reasons, how-

Case 1:05-cv-02705-CAP   Document 275-1   Filed 11/27/06   Page 12 of 12

Page 11

2004 U.S. Dist. LEXIS 20002, *; Fed. Sec. L. Rep. (CCH) P92,913

ever, the Receiver must, bring the motion in the name of Alpha Telcom.

### 19. Misleading the Investors

At least one agent has been making a concerted effort to persuade payphone purchasers to fund the agent's legal defense. The statements made to justify this are utter nonsense, *e.g.*, that supporting the agent's legal defense is legally required so the payphone owners can prove they attempted to mitigate damages. To quote the old adage, "Fool me once, shame on You. Fool me twice, shame on me."

As a result of this deceptive campaign, the court has received numerous letters from payphone purchasers who fear the motion for disgorgement will somehow prevent them from seeking relief directly from the agents. It will not.

### 20. Request for Bar Order

Two agents seek a "bar order" precluding other persons, such as former clients, from bringing claims against the agents once they have disgorged commissions to Plaintiffs. See Fluck v. Blevins, 969 F. Supp. 1231 (D. Or. 1997) **[*39]** (explaining concept). The request is denied. First, this is not a settlement. Second, the agents are disgorging only retained commissions, which may be just a fraction of the losses sustained by the clients. Finally, the wide variety of potential claimants and legal theories makes it impractical to anticipate every scenario that may arise. The judge in any hypothetical future case can better determine the effect, if any, of disgorgement.

### 21. Prejudgment Interest

Plaintiffs want prejudgment interest assessed against each agent, at the rates provided by statute for post-judgment interest, 28 U.S.C. § 1961. Whether to award prejudgment interest, and the rate, are discretionary. Wessel v. Buhler, 437 F.2d 279, 284 (9th Cir. 1971); SEC v. Hughes Capital Corp, 917 F. Supp. 1080, 1089 (D. N.J. 1996). Computing prejudgment interest would be a complex task. The particular interest rate suggested by the Receiver varies weekly and is primarily intended for use when the principal is a fixed amount accruing on a specific date. By contrast, each agent received differing amounts on differing dates spread over several years. **[*40]** For both logistical and equitable reasons, prejudgment interest is not appropriate in this instance. Any resulting savings can be applied toward defraying the agent's expenses.

### Conclusion

The Motion (## 214 and 219) for Disgorgement is granted as modified above. The Receiver shall furnish the court with an updated spreadsheet showing the amounts to be disgorged from each agent, after deducting the setoff for expenses.

Within 20 days after this opinion is filed, any agent who disputes the amount of commissions attributed to that agent may submit affidavits and documentary evidence supporting their position. The Receiver then has 10 days to respond.

A copy of this opinion and order shall be sent to the attorneys of record, and any agents who appeared pro se. The Receiver shall also send a copy to all agents who have not yet appeared.

IT IS SO ORDERED.

DATED this 18 day of August, 2004.

HONORABLE OWEN M. PANNER

U.S. DISTRICT COURT JUDGE